UNITED STATES of America, ex rel. Salvatore SOLLAZZO, Petitioner-Appellant,

v.

P. A. ESPERDY, as District Director, Immigration and Naturalization Service, New York, New York, Respondent-Appellee.

No. 184, Docket 26605.

United States Court of Appeals Second Circuit.

Argued Nov. 17, 1960.

Decided Jan. 13, 1961.

Nathan Kestnbaum, New York City, for petitioner-appellant.

Roy Babitt, Sp. Asst. U. S. Atty., New York City (S. Hazard Gillespie, Jr., U. S. Atty., Southern Dist. of New York, New York City, on the brief), for respondent-appellee.

Before LUMBARD, Chief Judge, and WATERMAN and MOORE, Circuit Judges.

LUMBARD, Chief Judge.

This appeal turns on whether bribery, of a participant in an amateur sport, in violation of New York Penal Law, McKinney's Consol.Laws, c. 40, § 382(1), is a crime involving "moral turpitude" within the meaning of § 19(a) of the Immigration Act of 1917, 8 U.S.C. § 155(a) (1946 ed.).* If it is such a crime, it is conceded that the relator, Salvatore Sollazzo, an alien, sentenced to prison for a term of eight to sixteen years upon his plea of guilty, is deportable under said § 19(a) of the Act since he had been sentenced in 1933 to seven and one-half years for attempted robbery in the first degree. We hold that bribery of a participant in an amateur sport does involve moral turpitude and accordingly we affirm the order of the district court which dismissed the writ of habeas corpus.

From the petitioner's writ and the return to the writ we are informed only that in 1951 the relator pleaded guilty in the Court of General Sessions, New York County, to the crime of bribery of a participant in an amateur game in violation of New York Penal Law, § 382(1).[1] That statute, among other things, makes it a felony to give, promise, or offer to any amateur who is a participant or expects to participate in certain sports, any valuable thing "with intent to influence him to lose or try to lose or cause to be lost or to limit his or his team's margin of victory."[2]

There can be no question but that any crime of bribery involves moral turpitude, and so a New York court has held in another context, In re McNally, 1st Dept., 252 App.Div. 550, 300 N.Y.S. 459 (disbarment of attorneys for soliciting and giving bribes in commercial situation). Bribery in essence is an attempt to influence another to disregard his duty while continuing to appear devoted to it or to repay trust with disloyalty. It is not too much to say that the basic assumption of a morally healthy nation is that its citizens will reject such temptation and strive to give their best, their undivided, and their loyal efforts in response to trust and in order to retain self-respect. It is equally a challenge to that assumption and equally heinous to subvert the integrity of an amateur athlete as it is to corrupt the loyalty of employee to employer or the loyalty of a public servant to the people. Cf. Glickfield v. State, 1953, 203 Md. 400, 101 A.2d 229. That the criminal law dealt with the bribery of public officials and even employees long before it proscribed the

---

* Now 8 U.S.C.A. § 1251.

1. We do not have before us the indictment to which the relator pleaded guilty, nor do we know whether this was before the Immigration & Naturalization examiner. It would seem to be desirable to have such evidence before the examiner and the district court. See United States ex rel. Zaffarano v. Corsi, 2 Cir., 1933, 63 F.2d 757.

2. New York Penal Law, § 382(1) is entitled: "Bribery of participants in professional or amateur games, sports, contests and horse racing.
    It provides:
    "Whoever gives, promises or offers to any professional or amateur baseball, football, hockey, polo, tennis or basketball player or boxer or any player or referee or other official who participates or expects to participate in any professional or amateur game or sport or any jockey, driver, groom or any person participating or expecting to participate in any horse race, including owners of race tracks and their employees, stewards, trainers, judges, starters or special policeman, or to any manager, coach or trailer of any team or participant or prospective participant in any such game, contest or sport, any valuable thing with intent to influence him to lose or try to lose or cause to be lost or to limit his or his team's margin of victory, or in the case of a referee or other official to affect his decisions or the performance of his duties in any way, in a baseball, football, hockey or basketball game, boxing, tennis or polo match or a horse race or any professional or amateur sport, or game, in which such player or participant or jockey or driver or referee or other official, in taking part or expects to take part, or has any duty or connection therewith, is guilty of a felony, punishable by imprisonment for not less than one year, nor more than ten years and by a fine of not more than ten thousand dollars."

'bribery of amateur athletes and that some jurisdictions still do not have a statute analogous to § 382(1), does not show that the conduct proscribed therein is not immoral but simply that only recently has it seemed necessary to make such conduct criminal. Criminal or not, our tradition has been that it is morally base to corrupt another in his duty or loyalty. Where the people have declared particular aspects of such reprehensible conduct to be a crime, as in New York and some other states [3] they have declared the bribery of amateur athletes, there can be no doubt that the crime involves moral turpitude.

Indeed, corruption of an amateur athlete is peculiarly distasteful. The athlete generally performs before the child in him wholly turns to man and thus is still unformed in character. Since at least as long ago as the founding of the republic, we have thought that participation in amateur sports is a valuable training for our youth, for their responsibilities in the armed services, in their civilian occupations and generally as citizens. Indeed few quotations are better known and more approved than the remark attributed to the Duke of Wellington that the Battle of Waterloo was won on the playing fields of Eton. We have believed that participation in athletics is not only healthful exercise but that it also inculcates and nourishes such desirable qualities as steadfastness, spirit, loyalty and team play. Violation of § 382(1) can only tend to subvert the basic principles of amateur sport. Virtue there is in striving with one's whole spirit, but only evil can come from lack of effort that is bought.

The crime of bribing a participant in an amateur sport is one which in the light of contemporary standards inherently involves moral turpitude.

Affirmed.

3. See Cal.Penal Code, § 337b; Iowa Stat. § 739.12 I.C.A.; Md.Code 1951, Art. 27, § 30; Purdon's Penn.Stats. Tit. 18, § 4614; Tenn.Stat. § 39–824.